# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| NICHOLAS A. PAYTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:09-CV-222 |
| AARON FIKE, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Nicholas Payton brings this 42 U.S.C. § 1983 action against Defendant Deputy Aaron Fike of the Waterloo, Indiana, Marshal's Office, alleging that Deputy Fike used excessive force against him during his arrest in violation of his rights under the Fourth Amendment.[1] Now before the Court is Deputy Fike's fully-briefed motion for summary judgment (Docket # 17), in which he denies that he used excessive force against Payton and asserts that he is entitled to qualified immunity.[2] (Docket # 18, 22, 28.)

For the reasons provided in this Opinion and Order, Deputy Fike's motion for summary judgment will be DENIED.

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Deputy Fike also filed a motion to strike certain evidence produced by Payton with his response brief. (Docket # 26.) Payton responded on August 10, 2010 (Docket # 29), but Deputy Fike failed to file a reply brief and the time to do so has since passed. In any event, because Deputy Fike's motion for summary judgment warrants denial even when the evidence he seeks to strike is disregarded, the motion to strike will be DENIED AS MOOT.

## II.  FACTUAL BACKGROUND[3]

On the evening of August 12, 2007, Payton was driving his motorcycle on Indiana Interstate 69 ("I-69") north, heading home to Waterloo, Indiana, from Fort Wayne. (Payton Dep. 33-34.) He was wearing his helmet, and he could not hear well because the bike was "really loud". (Payton Dep. 35.) He was driving in a "tucked down" position and thus could not see his mirrors at all. (Payton Dep. 2.) He was in a hurry to get home, as he was feeling tired and worn out due to having a chest tube removed from his left side several days before. (Payton Dep. 26-30, 34.) The chest tube was the result of a collapsed lung that he had suffered three to four weeks earlier. (Payton Dep. 28.)

Payton took the U.S. 6 Waterloo exit from I-69 and then turned right toward Waterloo. (Payton. 33-34.) Unbeknownst to Payton, Deputy Fike was on patrol in his squad car traveling west bound on U.S. 6 east of I-69. (Fike Aff. ¶¶ 4, 5.) He heard a motorcycle's engine rev as it accelerated and passed him going east bound on U.S. 6. (Fike Aff. ¶ 5.) As it passed, Deputy Fike clocked it with his radar at 74 miles per hour; the speed limit on that roadway was 50 miles per hour. (Fike Aff. ¶ 6.) The motorcycle continued to accelerate as it proceeded on U.S. 6 towards County Road ("C.R.") 31. (Fike Aff. ¶ 6.) Deputy Fike then activated his blue and red emergency lights and turned around to pursue the motorcycle. (Fike Aff. ¶ 6, Ex. B.)

With Deputy Fike in pursuit, Payton turned north on C.R. 31 from U.S. 6 without signaling. (Fike Aff. ¶ 7.) At that point, Deputy Fike activated his sirens and advised DeKalb County Dispatch by radio that he was in pursuit of a motorcycle on C.R. 31. (Fike Aff. ¶ 7, Ex.

---

[3] For summary judgment purposes, the facts are recited in the light most favorable to Payton, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

B.) Deputy Fike observed the motorcycle speeding up, swaying back and forth, and straying from its lane of travel. (Fike Aff. ¶ 8.) Deputy Fike was traveling in excess of 100 miles per hour at times during his pursuit, yet still could not gain ground on the motorcycle. (Fike Aff. ¶ 8.)

When Payton came up to a T-intersection at C.R. 31 and C.R. 14, he attempted to execute the turn but hit some gravel on the roadway and the bike slid out from underneath him. (Fike Aff. ¶ 9; Payton Dep. 35.) He landed on the ground on the north side of C.R. 14. (Fike Aff. ¶ 9, Ex. B.) He was in a lot of pain, as he was wearing shorts at the time. (Payton Dep. 35.) He discovered that he ruined his helmet in the crash and was aggravated with himself, causing him to slam his helmet on the ground. (Payton Dep. 35, 38.) It was at this point when he turned around and saw Deputy Fike behind him with his weapon drawn. (Payton Dep. 35, 40.)

Though he could not hear clearly due to the sirens, Payton thought that Deputy Fike said: "Come over here[.]"[4] (Payton Dep. 40, Ex. B.) Therefore, Payton took off his shirt so that Deputy Fike could see his bandages and proceeded to walk toward Deputy Fike, who is 6' and weighs 214 pounds.[5] (Payton Dep. 40; Fike Aff. ¶ 10, Ex. B; Def.'s Answer to Pl.'s Interrog No. 3.) Deputy Fike then, still with his gun drawn, told Payton to get onto the ground. (Payton Dep. 40; Fike Aff. ¶ 11, Ex. B.) However, before he even had time to get down, Deputy Fike grabbed Payton by the arm and "slammed" or "tackled" him to the ground. (Payton Dep. 40; Fike Aff. ¶

---

[4] On Deputy Fike's in-car video, a command of "Get on the ground" is audible, not "Come over here." (Fike Aff. Ex. B.)

[5] Payton explained that when turned and saw Deputy Fike with his gun drawn, he sensed "something [that] wasn't good [was] about to happen." (Payton Dep. 49.) Consequently, he took his shirt off to show Deputy Fike that he had bandages on his chest because he "didn't want [Deputy Fike] to engage extremely physical with [him]." (Payton Dep. 49.)

3

11.) Payton tried to explain that he had just gotten out of the hospital, but Deputy Fike just kept telling him to "shut up". (Payton Dep. 42, Ex. B.)

Once on the ground, Deputy Fike proceeded to handcuff Payton. (Payton Dep. 42.) In doing so, he first asked Payton to give him his right arm and keep his left arm out in front of him. (Payton Dep. 42, 52.) Payton complied, placing his right arm behind his back and his left arm out in front of him. (Payton Dep. 42, 52.) Deputy Fike then cuffed Payton's right arm. (Payton Dep. 42, 52.) Once Payton's right arm was cuffed and behind his back, Deputy Fike did not attempt to grab his left arm. (Payton Dep. 43-44.) Rather, he rolled Payton over and punched him in the face, in particular, his jaw. (Payton Dep. 43-44.) Payton told Deputy Fike: "You didn't have to fucking hit me." (Payton Dep. 44.) Deputy Fike then handcuffed Payton completely. (Payton Dep. 44.)

Deputy Fike, of course, recalls the circumstances surrounding the handcuffing differently. He contends that after he ordered Payton to get down on the ground, Payton continued to advance toward him in an aggressive manner. (Fike Aff. ¶ 11, Ex. B.) As Payton got closer, Deputy Fike states that he holstered his firearm, grabbed Payton, and took him to the ground. (Fike Aff. ¶ 11.) He contends that Payton was struggling, yelling, and swearing as he attempted to handcuff him and that Payton refused to comply with his order to give him his hands. (Fike Aff. ¶¶ 11, 12.) Because of Payton's failure to comply, Deputy Fike attempted to apply a "brachial stun" with the inside portion of his forearm in order to subdue Payton and handcuff him, and that is when his inner arm made contact with the side of Payton's face. (Def.'s Answer to Pl.'s Interrog. 1; Fike Aff. ¶ 11.) Deputy Fike contends Payton continued to refuse to comply with his commands even after he was struck and instead kept tightening up his arms in

4

response to the handcuffing attempts. (Fike Aff. ¶ 12.)

Once cuffed, Deputy Fike stood Payton up, and they talked outside of his car. (Payton Dep. 49; Fike Aff. Ex .B.) Payton emphasized to Deputy Fike that he was not running from him.[6] (Payton Dep. 45, 75.)

Payton suffered small lacerations to his elbow, legs, and back in the crash. (Fike Aff. ¶ 13, Ex. B; Payton Dep. 37.) Because of these injuries, Deputy Fike called emergency medical services to the scene and they briefly examined him, but Payton refused any further medical treatment. (Fike Aff. ¶ 13.)

Deputy Fike then transported Payton to the DeKalb County Jail where he was "booked" by intake Officer Ben Rice. (Fike Aff. Ex. A; Rice Aff. ¶ 6.) Officer Rice did not notice any signs of injury to Payton's face. (Rice. Aff. ¶ 8, Ex. 1.) Payton was subsequently charged with resisting law enforcement with a vehicle, a Class D felony; resisting law enforcement, a Class A misdemeanor; reckless driving, a Class B misdemeanor; and three infractions for exceeding the posted speed limit, failing to signal, and disregarding a stop sign. (Fike Aff. ¶ 15.)

On August 15, 2007, three days after the incident, Payton visited Dr. Daniel Schmidt, D.D.S. (Resp. Br. Ex. C.) Dr. Schmidt documented that Payton had trouble opening his jaw for the first few days after the incident and that he had some discomfort in the right temperomandibular joint. (Resp. Br. Ex. C.) He observed, however, that Payton's jaw was not fractured and that any injury was non-severe. (Payton Dep. 58-60.) Dr. Schmidt did not recommend any further treatment, but simply advised Payton to maintain a soft diet. (Resp. Br.

---

[6] Deputy Fike contends that Payton admitted that he was speeding and that he saw Deputy Fike after exiting I-69. (Fike Aff. ¶ 14.)

5

Ex. C; Payton Dep. 60, 68.)

## III. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Payne*, 337 F.3d at 770. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*; *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771; *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (instructing that in determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

6

is a 'genuine' dispute as to those facts").

## IV. ANALYSIS

Payton advances a § 1983 claim of excessive force against Deputy Fike, and Deputy Fike moves for summary judgment on this claim. When crediting Payton's version of the events, which the Court must do at this stage of the proceedings, Deputy Fike's motion must be denied.

### A. *A Reasonable Jury Could Conclude That Deputy Fike Used Excessive Force By Attempting a "Brachial Stun" When Handcuffing Payton*

A claim of "excessive force . . . in the course of an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Scott*, 127 S. Ct. at 1776. This gives rise to the overarching question, "whether [the officer's] actions were objectively reasonable." *Scott,* 127 S. Ct. at 1776. Answering this question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

At bottom then, the inquiry focuses on whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Id*. at 397. This means that the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Consequently, a "police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest."[7] *Payne*,

---

[7] Of course, "the Fourth Amendment's 'reasonableness' standard is a test of 'objective reasonableness,' precluding an inquiry into an officer's subjective intent." *O'Toole v. Kalmar*, No. 85 C 7380, 1990 WL 19542, at *5 (N.D. Ill. Feb. 23, 1999). Thus, whether an officer "acted 'maliciously or sadistically' has no bearing on whether a

337 F.3d at 778 (citation omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (stating that the court must look to whether the totality of the circumstances justified the seizure).

Here, when crediting Payton's version of the events, the excessive force claim is viable. Payton contends that Deputy Fike, with his gun drawn, ordered Payton to come toward him, and Payton complied, taking his shirt off in the process so that Deputy Fike could see his bandages. He states that Deputy Fike then instructed him to get on the ground, but that before he even had time to comply with the order, Deputy Fike "slammed" or "tackled" him to the ground. *Cf. Johnson v. Scott*, No. 1:07-CV-155, 2008 WL 3874690, at *7 n.6 (N.D. Ind. Aug. 14, 2008) (granting summary judgment in favor of officer on plaintiff's excessive force claim where plaintiff had many opportunities to peacefully surrender before the officer released a police dog to apprehend him).

Of course, "from the perspective of a reasonable officer on the scene," *Graham* at 396, which is the relevant viewpoint here, *Smith v. City of Chicago*, 242 F.3d 737, 743-44 (7th Cir. 2001), Deputy Fike's "slam" or "tackle" of Payton to the ground might well have been reasonable. It is undisputed on this record that Deputy Fike pursued Payton for some distance with his lights and siren before Payton crashed his motorcycle at the intersection, reasonably appearing to Deputy Fike as though he were fleeing.[8] *See id.* (explaining that it is the officer's

---

use of force is 'reasonable' under the Fourth Amendment." *Id.* (citing *Graham*, 109 S. Ct. at 1872). That is, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 109 S. Ct. at 1872.

[8] Similarly, in *Smith*, 242 F.3d at 743-44, a motorist committed a minor traffic violation, and the officer attempted to pull him over. The motorist, however, continued to drive twelve blocks, contending that he did not hear the sirens and did not know the officer was following him. *Id.* Once stopped, the officer pulled the motorist out of the car, pinned his arms behind his back, slammed him against the hood of the car, and handcuffed him. *Id.* The Seventh Circuit Court of Appeals held that the officer's actions were reasonable, as from the officer's point of view the motorist was appearing to flee, which justified the use of a higher degree of force to protect himself and the

point of view that is relevant and thus plaintiff's assertion that he did not know he was being followed by police and did not hear the sirens "are of no matter"). Moreover, Payton admits that he could not clearly hear Deputy Fike's first command, conceding that he only *thought* that he said "Come over here." Indeed, Deputy Fike's in-car video suggests that Deputy Fike's first command was to "Get on the ground.", not "Come over here."

Nevertheless, regardless whether Deputy Fike's initial tackling of Payton to the ground was reasonable, a jury could conclude that his punch of Payton in the face, that is, the attempted "brachial stun", was excessive. According to Payton's telling of the events, once he was on the ground he complied with Deputy Fike's order to put his right arm behind his back for handcuffing and his left arm out in front of him. Once Payton did so and his right wrist was cuffed, rather than simply cuff his left arm, Deputy Fike rolled him over and punched him in the face, all while Payton was explaining that he had recently been hospitalized. Payton asserts that he never scuffled with or resisted Deputy Fike when he was being handcuffed, but rather, cooperated through the entire process. (Payton Dep. 49-52.)

Accepting Payton's assertion that he was cooperative and never resisted Deputy Fike during the handcuffing as true, "it is difficult to conceive of a reasonable explanation for [Deputy Fike's] conduct, and a jury could readily conclude that [Fike] used excessive force in [attempting a 'brachial stun' and inadvertently punching Payton in the face.]" *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 686 (7th Cir. 2007). Indeed, "a police officer may not continue to use

---

community. *Id.*; *see also Williams v. Hampton*, No. 05-2201, 2007 WL 952024 (C.D. Ill. Mar. 27, 2007) (finding no excessive force where after motorist crashed in a high speed chase, officer used force to take a motorist quickly to the ground so that officer could gain control of the situation and ensure safety of responding officers); *Campbell v. Johnson*, No. 04-C-661-C, 2005 WL 1514171 (W.D. Wis. June 24, 2005) (finding no excessive force where after motorist led officer on a six-minute high speed chase, officer used force to pull motorist out of the vehicle and inadvertently dislocated motorist's shoulder).

9

force against a suspect who is subdued and complying with the officer's orders." *Hayes v. City of Indianapolis*, No. 1:08-cv-006-DFH-JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) (collecting cases).[9] "Even 'one violent push and poke' will constitute excessive force when there is no provocation."[10] *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 475-76 (7th Cir. 1997)); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."); *Norris v. Bain*, No. 1:04-CV-1545DFHTAB, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006) ("[It is] well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable."); *Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995) ("[T]he use of any significant force . . . not reasonably necessary to effect an arrest—as where . . . the force is used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable.").

Moreover, the Seventh Circuit Court of Appeals has explained that a "significant injury is not required for Fourth Amendment excessive force claims . . . ." *Rambo v. Daley*, 68 F.3d 203,

---

[9] In *Hayes*, officers attempted to stop a motorcyclist who disregarded a traffic signal, and he began to flee. 2009 WL 700232, at *5. However, the motorcyclist later stopped, surrendered, and complied with all of the officer's commands. *Id.* According to the plaintiff, the officers kicked and punched him in the head *after* he surrendered. *Id.* The District Court denied the officers' motion for summary judgment on the excessive force claim, articulating that "[a]ccepting [the plaintiff's] version of the events, the officers had no reason to punch, kick or stomp on him." *Id.*

[10] In fact, the case that Deputy Fike relies upon, *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006), is easily distinguishable, as there the plaintiff "persisted in failing to give the officer his hands" when the officer was attempting to handcuff him. (Def.'s Mem. of Law 9 (citing *Wertish*, 433 F.3d at 1067).) Here, according to Payton, he fully complied with Deputy Fike's command to place his right hand behind his back and his left arm out in front of him, rendering the use of a "brachial stun" unnecessary and excessive.

207 n.2 (7th Cir. 1995); *see also Herzog v. Vill. of Winnetka, Ill*, 309 F.3d 1041, 1043 (7th Cir. 2002) ("The Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987)). Therefore, the fact that Payton's jaw was not broken and that a dentist told him his injuries were not severe "does not rule out the possibility that [Deputy Fike] employed force that was not reasonably necessary to secure [him]." *Holmes*, 511 F.3d at 687. Indeed, "[a] factfinder might conclude that [Payton's] injuries were slight but nonetheless find that [Deputy Fike] employed more force than was justified." *Id*. (collecting cases).

Of course, the Supreme Court has instructed that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Payne*, 337 F.3d at 779 (quoting *Graham*, 490 U.S. at 396-97). Nevertheless, even given this flexibility, Deputy Fike's force in arresting Payton, who allegedly was not threatening to harm him or anyone else at the scene, was not resisting or evading arrest, and was pursued for a relatively minor offense, was not objectively reasonable. *See id*.; *cf. Duran v. Sirgedas*, 240 F. App'x 104 (7th Cir. 2007) (unpublished) (finding no excessive force where officer hit plaintiff in the head with his fist to subdue him and plaintiff admitted to resisting arrest by, among other things, biting and struggling with the officers). Therefore, Deputy Fike's motion for summary judgment on the basis that the force he used was reasonable under the circumstances will be DENIED.

### B. *Deputy Fike Is Not Entitled to Qualified Immunity*

Deputy Fike further argues that even if it is concluded that he used excessive force, he is

still entitled to summary judgment on the basis of qualified immunity. Deputy Fike's additional argument is also unsuccessful.

"The doctrine of qualified immunity shields from liability public officials who perform discretionary duties." *Chelios v. Heavener*, 520 F.3d 678, 690-91 (7th Cir. 2008). "Qualified immunity shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). A two-part test is applied to determine whether the doctrine attaches: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Purvis v. Oest*, __ F.3d __, 2010 WL 2991137, at *6 (7th Cir. Aug. 2, 2010) (citing *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)). A plaintiff may defeat a qualified immunity defense by "pointing to a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights."[11] *Wheeler*, 539 F.3d at 639; *see also Smith*, 242 F.3d at 742; *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999).

Here, the facts of the two cases cited by Deputy Fike in support of his qualified immunity argument, *Smith*, 242 F.3d at 743, and *Lawrence v. Kenosha County*, 391 F.3d 837, 843 (7th Cir. 2004), are not sufficiently analogous to the instant circumstances and thus are not persuasive. *Smith* dealt only with an officer's initial "tackle" of a motorist that appeared to be fleeing, not a

---

[11] The Seventh Circuit has recognized that the excessive force standard is "well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *DuFour-Dowell*, 969 F. Supp. at 1120-21 (citing *Lanigan*, 110 F.3d at 476-77). "However, the Seventh Circuit has left open the possibility that the applicable law may be sufficiently unsettled to justify application of the defense in a particular case." *Id*. (citing *Lanigan*, 110 F.3d at 477).

blow to the head after the motorist was already subdued and complying with the officer's commands. And in *Lawrence*, the motorist was combative, irrationally angry, and refused to stop his vehicle and produce his driver's license. Therefore, neither case produced by Deputy Fike is analogous with Payton's version of the facts.

At the time of Payton's arrest, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." *Holmes*, 511 F.3d at 687; *see Norris*, 2006 WL 753131, at *14 ("[T]he Seventh Circuit [has] made clear that police officers do not have the right to inflict 'wholly gratuitous' force on a subdued suspect who was not resisting arrest." (citing *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996))). Accepting as true Payton's contention that he did not offer any physical resistance, Deputy Fike could not have reasonably thought that the gratuitous force he employed while handcuffing Payton was justified. *See Holmes*, 511 F.3d at 687. That is, no reasonable officer could have thought that it was permissible to administer a "brachial stun" or a punch to the jaw on an unresisting arrestee. *See id.* (citing *Payne*, 337 F.3d at 780); *Hayes*, 2009 WL 700232, at *4 ("It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders.") (collecting cases).

Therefore, Deputy Fike's motion for summary judgment on the basis of qualified immunity will be DENIED.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket # 17) is

DENIED, and his motion to strike (Docket # 26) is DENIED AS MOOT.

SO ORDERED.

Enter for August 24, 2010.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge